**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

RICKY CARTER,                                    No. CIV S-09-1719-JAM-CMK-P

            Petitioner,

    vs.                                          <u>FINDINGS AND RECOMMENDATIONS</u>

JAMES A. YATES,

            Respondent.

_____/

        Petitioner, a state prisoner proceeding pro se, brings this petition for a writ of

habeas corpus pursuant to 28 U.S.C. § 2254.  Pending before the court are petitioner's petition

for a writ of habeas corpus (Doc. 1), respondent's answer (Doc. 9), and petitioner's reply (Doc.

16).

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

1

# I. BACKGROUND

### A.  Facts[1]

The state court recited the following facts, and petitioner has not offered any clear and convincing evidence to rebut the presumption that these facts are correct:

> In 2004, defendant committed robberies at three different businesses: Taco Bell, Gunther's Ice Cream, and Subway.  His argument on appeal concerns the Taco Bell crimes only.
> On April 11, 2004, four Taco Bell employees were working behind the counter: Gloria Sanchez (a cashier), Shirleen Nand (the assistant manager), Jose Noriega (a cashier), and Lourdes Solario (whose job description was not given at trial).  Defendant entered the restaurant wearing a ski mask and brandishing a gun.  As Solario and Sanchez fled to the back of the restaurant, defendant pointed the gun at Nand and demanded money.  She opened the cash register.  Defendant took some cash and ran.

### B.  Procedural History

Petitioner was convicted following a jury trial of eight counts of robbery and one count of being a felon in possession of a firearm.  As to each of the robbery counts, the jury found that petitioner personally used a firearm during the commission of the crime.  Petitioner admitted to having prior serious felony convictions.  Petitioner was sentenced to an indeterminate term of 100 years to life in state prison.  The sentence and conviction were affirmed on direct appeal and the California Supreme Court denied direct review.  Petitioner also filed post-conviction actions in the California Court of Appeal and California Supreme Court, both of which denied relief without comment or citation.  Respondent concedes that petitioner's federal petition is timely and that his claims are exhausted.

/ / /

/ / /

---

[1]  Pursuant to 28 U.S.C. § 2254(e)(1), ". . . a determination of a factual issue made by a State court shall be presumed to be correct."  Petitioner bears the burden of rebutting this presumption by clear and convincing evidence.  See id.  These facts are, therefore, drawn from the state court's opinion(s), lodged in this court.  Petitioner may also be referred to as "defendant."

## II.  STANDARDS OF REVIEW

Because this action was filed after April 26, 1996, the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") are presumptively applicable.  See Lindh v. Murphy, 521 U.S. 320, 336 (1997); Calderon v. United States Dist. Ct. (Beeler), 128 F.3d 1283, 1287 (9th Cir. 1997), cert. denied, 522 U.S. 1099 (1998).  The AEDPA does not, however, apply in all circumstances.  When it is clear that a state court has not reached the merits of a petitioner's claim, because it was not raised in state court or because the court denied it on procedural grounds, the AEDPA deference scheme does not apply and a federal habeas court must review the claim de novo.  See Pirtle v. Morgan, 313 F.3d 1160 (9th Cir. 2002) (holding that the AEDPA did not apply where Washington Supreme Court refused to reach petitioner's claim under its "re-litigation rule"); see also Killian v. Poole, 282 F.3d 1204, 1208 (9th Cir. 2002) (holding that, where state court denied petitioner an evidentiary hearing on perjury claim, AEDPA did not apply because evidence of the perjury was adduced only at the evidentiary hearing in federal court); Appel v. Horn, 250 F.3d 203, 210 (3d Cir.2001) (reviewing petition de novo where state court had issued a ruling on the merits of a related claim, but not the claim alleged by petitioner).  When the state court does not reach the merits of a claim, "concerns about comity and federalism . . . do not exist."  Pirtle, 313 F. 3d at 1167.

Where AEDPA is applicable, federal habeas relief under 28 U.S.C. § 2254(d) is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Thus, under § 2254(d), federal habeas relief is available only where the state court's decision is "contrary to" or represents an "unreasonable application of" clearly established law.  Under both

3

1   standards, "clearly established law" means those holdings of the United States Supreme Court as

2   of the time of the relevant state court decision.  See Carey v. Musladin, 549 U.S. 70, 74 (2006)

3   (citing Williams, 529 U.S. at 412) .  "What matters are the holdings of the Supreme Court, not

4   the holdings of lower federal courts."  Plumlee v. Masto, 512 F.3d 1204 (9th Cir. 2008) (en

5   banc).  Supreme Court precedent is not clearly established law, and therefore federal habeas

6   relief is unavailable, unless it "squarely addresses" an issue.  See Moses v. Payne, 555 F.3d 742,

7   753-54 (9th Cir. 2009) (citing Wright v. Van Patten, 552 U.S. 120, 28 S. Ct. 743, 746 (2008)).

8   For federal law to be clearly established, the Supreme Court must provide a "categorical answer"

9   to the question before the state court.  See id.; see also Carey, 549 U.S. at 76-77 (holding that a

10  state court's decision that a defendant was not prejudiced by spectators' conduct at trial was not

11  contrary to, or an unreasonable application of, the Supreme Court's test for determining prejudice

12  created by state conduct at trial because the Court had never applied the test to spectators'

13  conduct).  Circuit court precedent may not be used to fill open questions in the Supreme Court's

14  holdings.  See Carey, 549 U.S. at 74.

15         In Williams v. Taylor, 529 U.S. 362 (2000) (O'Connor, J., concurring, garnering a

16  majority of the Court), the United States Supreme Court explained these different standards.  A

17  state court decision is "contrary to" Supreme Court precedent if it is opposite to that reached by

18  the Supreme Court on the same question of law, or if the state court decides the case differently

19  than the Supreme Court has on a set of materially indistinguishable facts.  See id. at 405.  A state

20  court decision is also "contrary to" established law if it applies a rule which contradicts the

21  governing law set forth in Supreme Court cases.  See id.  In sum, the petitioner must demonstrate

22  that Supreme Court precedent requires a contrary outcome because the state court applied the

23  wrong legal rules.  Thus, a state court decision applying the correct legal rule from Supreme

24  Court cases to the facts of a particular case is not reviewed under the "contrary to" standard.  See

25  id. at 406.  If a state court decision is "contrary to" clearly established law, it is reviewed to

26  determine first whether it resulted in constitutional error.  See Benn v. Lambert, 283 F.3d 1040,

4

1052 n.6 (9th Cir. 2002).  If so, the next question is whether such error was structural, in which

case federal habeas relief is warranted.  <u>See</u> <u>id.</u>  If the error was not structural, the final question

is whether the error had a substantial and injurious effect on the verdict, or was harmless.  <u>See</u> <u>id.</u>

State court decisions are reviewed under the far more deferential "unreasonable

application of" standard where it identifies the correct legal rule from Supreme Court cases, but

unreasonably applies the rule to the facts of a particular case.  <u>See</u> <u>Wiggins v. Smith</u>, 539 U.S.

510, 520 (2003).  While declining to rule on the issue, the Supreme Court in <u>Williams</u>, suggested

that federal habeas relief may be available under this standard where the state court either

unreasonably extends a legal principle to a new context where it should not apply, or

unreasonably refuses to extend that principle to a new context where it should apply.  <u>See</u>

<u>Williams</u>, 529 U.S. at 408-09.  The Supreme Court has, however, made it clear that a state court

decision is not an "unreasonable application of" controlling law simply because it is an erroneous

or incorrect application of federal law.  <u>See</u> <u>id.</u> at 410; <u>see also</u> <u>Lockyer v. Andrade</u>, 538 U.S. 63,

75-76 (2003).  An "unreasonable application of" controlling law cannot necessarily be found

even where the federal habeas court concludes that the state court decision is clearly erroneous.

<u>See</u> <u>Lockyer</u>, 538 U.S. at 75-76.  This is because "[t]he gloss of clear error fails to give proper

deference to state courts by conflating error (even clear error) with unreasonableness."  <u>Id.</u> at 75.

As with state court decisions which are "contrary to" established federal law, where a state court

decision is an "unreasonable application of" controlling law, federal habeas relief is nonetheless

unavailable if the error was non-structural and harmless.  <u>See</u> <u>Benn</u>, 283 F.3d at 1052 n.6.

The "unreasonable application of" standard also applies where the state court

denies a claim without providing any reasoning whatsoever.  <u>See</u> <u>Himes v. Thompson</u>, 336 F.3d

848, 853 (9th Cir. 2003); <u>Delgado v. Lewis</u>, 233 F.3d 976, 982 (9th Cir. 2000).  Such decisions

are considered adjudications on the merits and are, therefore, entitled to deference under the

AEDPA.  <u>See</u> <u>Green v. Lambert</u>, 288 F.3d 1081 1089 (9th Cir. 2002); <u>Delgado</u>, 233 F.3d at 982.

The federal habeas court assumes that state court applied the correct law and analyzes whether

the state court's summary denial was based on an objectively unreasonable application of that

law.  See Himes, 336 F.3d at 853; Delgado, 233 F.3d at 982.

### III.  DISCUSSION

Petitioner raises two claims as follows:

Ground A:   The conviction for count four [arising from the 2004 Taco Bell robbery] violated Mr. Carter's Fourteenth Amendment right to due process of law because there was no substantial evidence that Ms. Solario possessed the property that was taken; and

Ground B:   Appellate counsel intentional failed to raise meritorious issue, render ineffective assistance of counsel, motion to suppress evidence because there was sufficient evidence that suggest that all evidence seized in this case was obtained as the result of an illegal act, and the motion to suppress should have been grant by the trial court.

### A.    Sufficiency of the Evidence

When a challenge is brought alleging insufficient evidence, federal habeas corpus

relief is available if it is found that, upon the record of evidence adduced at trial, viewed in the

light most favorable to the prosecution, no rational trier of fact could have found proof of guilt

beyond a reasonable doubt.  See Jackson v. Virginia, 443 U.S. 307, 319 (1979).[2]  Under Jackson,

the court must review the entire record when the sufficiency of the evidence is challenged on

habeas.  See id.  It is the province of the jury to "resolve conflicts in the testimony, to weigh the

evidence, and to draw reasonable inferences from basic facts to ultimate facts."  Id.  "The

question is not whether we are personally convinced beyond a reasonable doubt.  It is whether

rational jurors could reach the conclusion that these jurors reached."  Roehler v. Borg, 945 F.2d

[2]    Even though Jackson was decided before AEDPA's effective date, this expression of the law is valid under AEDPA's standard of federal habeas corpus review.  A state court decision denying relief in the face of a record establishing that no rational jury could have found proof of guilt beyond a reasonable doubt would be either contrary to or an unreasonable application of the law as outlined in Jackson.  Cf. Bruce v. Terhune, 376 F.3d 950, 959 (9th Cir. 2004) (denying habeas relief on sufficiency of the evidence claim under AEDPA standard of review because a rational jury could make the finding at issue).

1    303, 306 (9th Cir. 1991);  see also Herrera v. Collins, 506 U.S. 390, 401-02 (1993).  The federal

2    habeas court determines sufficiency of the evidence in the context of the substantive elements of

3    the criminal offense, as defined by state law.  See Jackson, 443 U.S. at 324 n.16.

4              The California Court of Appeal addressed this claim on direct appeal as follows:

5              Defendant contends that the evidence was insufficient to support
       the jury's conclusion that Solario constructively possessed the property of
6       her employer, Taco Bell.  We disagree.
              When defendant entered Taco Bell, wearing a ski mask, and
7       approached the counter, Solario was behind the counter.  She reacted to
       defendant's approach by fleeing to the back of the restaurant and hiding
8       there.  Defendant pointed the gun at Nand, who opened the register.
       Defendant took cash from the register and left.  Other than the fact of her
9       employment by Taco Bell and her presence behind the counter when
       defendant entered, there was no evidence of Solario's duties at the
10      restaurant.

11                                  * * *

12             There are two conflicting views concerning whether an employee
       who is not in actual possession of the employer's property constructively
13      possesses that property.  Some cases have held that "business employees –
       whatever their function – have sufficient representative capacity to their
14      employer so as to be in possession of property stolen from the business
       owner."  (citations omitted).  Another view is that the court must engaged
15      in "a fact-based inquiry regarding constructive possession by an employee
       victim . . . [T]he proper standard to determine whether a robbery
16      conviction can be sustained as to an employee who does not have actual
       possession of the stolen property is whether the circumstances indicate the
17      employee has sufficient representative capacity with respect to the owner
       of the property, so as to have express or implied authority over the
18      property. (citation and footnote omitted).

19   The Court of Appeal noted that the California Supreme Court had granted a petition for review in

20   another case in order to resolve this conflict.  The court then rendered its opinion on the issue:

21             In our opinion the . . . fact-based standard is vague and
       unworkable.   [¶] On the other hand, the . . . per se standard is clear and is
22      firmly based on precedent. . . . [¶] Accordingly, since Solario was an
       employee of Taco Bell, on duty and behind the counter at the time of the
23      robbery, she was in constructive possession of Taco Bell's property –
       namely the cash – when defendant took it by means of force or fear. . . .

24

25   / / /

26   / / /

7

1    Petitioner's claim is based entirely on the assertion that the state court applied the

2  wrong standard under state law for determining constructive possession.  This is a question of

3  state law and not a question under Jackson of whether a rational jury could have concluded that

4  petitioner was the robber.  A writ of habeas corpus is available under 28 U.S.C. § 2254 only on

5  the basis of a transgression of federal law binding on the state courts.  See Middleton v. Cupp,

6  768 F.2d 1083, 1085 (9th Cir. 1985); Gutierrez v. Griggs, 695 F.2d 1195, 1197 (9th Cir. 1983).

7  It is not available for alleged error in the interpretation or application of state law.  Middleton,

8  768 F.2d at 1085; see also Lincoln v. Sunn, 807 F.2d 805, 814 (9th Cir. 1987); Givens v.

9  Housewright, 786 F.2d 1378, 1381 (9th Cir. 1986).  Habeas corpus cannot be utilized to try state

10  issues de novo.  See Milton v. Wainwright, 407 U.S. 371, 377 (1972).  Therefore, the court finds

11  that petitioner's claim at Ground A fails to state a cognizable claim under § 2254.

12    **B.    Ineffective Assistance of Appellate Counsel**

13    The Sixth Amendment guarantees the effective assistance of counsel.  The United

14  States Supreme Court set forth the test for demonstrating ineffective assistance of counsel in

15  Strickland v. Washington, 466 U.S. 668 (1984).  First, a petitioner must show that, considering

16  all the circumstances, counsel's performance fell below an objective standard of reasonableness.

17  See id. at 688.  To this end, petitioner must identify the acts or omissions that are alleged not to

18  have been the result of reasonable professional judgment.  See id. at 690.  The federal court must

19  then determine whether, in light of all the circumstances, the identified acts or omissions were

20  outside the wide range of professional competent assistance.  See id.  In making this

21  determination, however, there is a strong presumption "that counsel's conduct was within the

22  wide range of reasonable assistance, and that he exercised acceptable professional judgment in all

23  significant decisions made."  Hughes v. Borg, 898 F.2d 695, 702 (9th Cir. 1990) (citing

24  Strickland, 466 U.S. at 689).

25  / / /

26  / / /

1    Second, a petitioner must affirmatively prove prejudice.  See Strickland, 466 U.S.

2    at 693.  Prejudice is found where "there is a reasonable probability that, but for counsel's

3    unprofessional errors, the result of the proceeding would have been different."  Id. at 694.  A

4    reasonable probability is "a probability sufficient to undermine confidence in the outcome."  Id.;

5    see also Laboa v. Calderon, 224 F.3d 972, 981 (9th Cir. 2000).  A reviewing court "need not

6    determine whether counsel's performance was deficient before examining the prejudice suffered

7    by the defendant as a result of the alleged deficiencies . . . If it is easier to dispose of an

8    ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be

9    followed."  Pizzuto v. Arave, 280 F.3d 949, 955 (9th Cir. 2002) (quoting Strickland, 466 U.S. at

10   697).

11   The Strickland standards also apply to appellate counsel.  See Smith v. Robbins,

12   528 U.S. 259, 285 (2000); Smith v. Murray, 477 U.S. 527, 535-36 (1986); Miller v. Keeney, 882

13   F.2d 1428, 1433 (9th Cir. 1989).  However, an indigent defendant "does not have a constitutional

14   right to compel appointed counsel to press nonfrivolous points requested by the client, if counsel,

15   as a matter of professional judgment, decides not to present those points."  Jones v. Barnes, 463

16   U.S. 745, 751 (1983).  Counsel "must be allowed to decide what issues are to be pressed."  Id.

17   Otherwise, the ability of counsel to present the client's case in accord with counsel's professional

18   evaluation would be "seriously undermined."  Id.; see also Smith v. Stewart, 140 F.3d 1263, 1274

19   n.4 (9th Cir. 1998) (counsel not required to file "kitchen-sink briefs" because it "is not necessary,

20   and is not even particularly good appellate advocacy.")  Further, there is, of course, no obligation

21   to raise meritless arguments on a client's behalf.  See Strickland, 466 U.S. at 687-88.  Thus,

22   counsel is not deficient for failing to raise a weak issue.  See Miller, 882 F.2d at 1434.  In order to

23   demonstrate prejudice in this context, petitioner must demonstrate that, but for counsel's errors,

24   he probably would have prevailed on appeal.  See id. at n.9.

25   ///

26   ///

9

1    Petitioner argues that appellate counsel rendered ineffective assistance for failing

2  to challenge the trial court's denial of a motion to suppress.  Before trial, defense counsel brought

3  a motion to suppress arguing that petitioner's detention and pat-down search were improper.  The

4  trial court denied the motion after conducting a hearing at which it heard testimony from the

5  officers who initially contacted petitioner and conducted the pat-down search.  Subsequent to the

6  trial court's ruling, defense counsel obtained a supplemental police report from Officer Chandler,

7  who arrived at the scene of petitioner's arrest shortly after the other officers and who conducted

8  the pat-down search.  During pre-trial proceedings, defense counsel filed a motion to dismiss

9  arguing that the motion to suppress had been wrongly decided given the belated discovery of

10  Officer Chandler's supplemental report.  Alternatively, counsel requested a new hearing on the

11  motion to suppress.  The trial court characterized counsel's arguments as a renewed motion to

12  suppress.

13    The trial court first concluded that it did not have authority under California law to

14  reconsider the prior denial of the motion to suppress because Officer Chandler's supplemental

15  report did not constitute new evidence and did not qualify as previously unknown grounds for the

16  original motion.  Despite this conclusion, and in an abundance of caution, the trial court addressed

17  the merits of petitioner's renewed motion to suppress:

18    And again, I'm going to get to the merits of it.
     I have read carefully the description from Officer Monk regarding
19  this stop.
     And I think this is during your cross-examination [at the original
20  hearing], Miss Repkow.  This is on page 57 of the reporter's transcript
     when you ask Officer Monk to describe Officer Nichols' conduct, as well
21  as the arrival of Officer Chandler and his partner.
     And he says, starting at line 8, they, that is, he's talking to Officer –
22  about Officer Chandler, they arrived shortly, like within seconds after
     Officer Nichols had notified me that he had located a gun on the
23  defendant's person.
     You ask within seconds of that?
24  He says yes.
     And then you ask where were they, were they there at the initial
25  search?

26  ///

10

And Officer Monk says not at the initial search, the cursory search when Officer Nichols located the gun, they were driving down the street, as soon as Officer Nichols said hey, he's got a gun and I place him in – his left arm in a two-hand wrist lock, they were hopping out of the car running towards us.

The significance of that to me is that is not – it's arguable – I understand your point that there doesn't seem to be much time between the time of the contact and the finding of the gun, but as a practical matter I don't find that this evidence, that of the report of Officer Chandler, is so obviously contradictory so as to give rise to the suspicion that either Officer Nichols or Officer Monk were not truthful in their statement during the [prior] motion.

I'm also persuaded – and the bottom line is I think Judge Bakarich had it right when he said – at page 64 of the transcript he says I'm making a finding of fact that that's the way it went down.

In other words, he made a finding of fact that they way Officer Nichols and Officer Monk described the incident, that is, contact, some brief questioning, what's your name, the defendant said he's on parole, and then he made a request to search, and the defendant acquiesced to that request, but what Judge Bakarich said, and what I agree with, he says what I'm saying is even if it didn't go down that way, based on everything, the physical description, the clothing, the car, the location being in the general area where these robberies had occurred, if they were going out in the middle of the night when it's dark to confront somebody, it's such a minimal intrusion, he's referring to the pat down, it's such a minimal intrusion, officer safety is paramount in cases like this, it would have been a minimal intrusion for them to conduct a pat down under that type of situation, once they found the gun it's all over.

I agree that the case law supports that decision of Judge Bakarich.

In other words, even if you were right and that there was not enough time to have the conversation, there appears to be several words of conversation discussed by Officer Nichols.

It seems to me, as it would seem to Judge Bakarich, that there was ample facts, there were ample facts in the mind of the officer.

In fact, you got Officer Nichols to concede to say, when I knew – when I saw that the car matched the description, and when I saw the writing on the jacket, those facts, in my mind I was not going to let him leave, he was – in essence he wasn't in my custody, he wasn't in my detention at the time, but as soon as I got him to – began to engage him, he wasn't going to leave.

But I think the case law is fairly clear that under those facts this officer did have the right to detain Mr. Carter.

* * *

I think the detention and the pat search was appropriate.

/ / /

/ / /

11

As respondent correctly notes, the standard on direct appeal for a challenge to the denial of a motion to suppress required the appellate court to defer to the trial court's factual findings.  Here, two judges made the same factual findings, concluding that the officers acted appropriately.  Specifically, the judges found that the officers were able to point to specific facts that constituted reasonable suspicion to detain petitioner.  See Terry v. Ohio, 392 U.S. 1 (1968). And, as respondent observes, "having properly detained Petitioner as someone meeting the description of a serial robber, the officer was permitted to pat him down for a weapon in the interest of officer safety."  See id. at 24.  Appellate counsel did not render deficient performance in making the tactical decision not to pursue an issue as to which there was little, if any, likelihood of success.  Therefore, the state court's silent denial of this claim was not an objectively unreasonable application of clearly established law.

## IV.  CONCLUSION

Based on the foregoing, the undersigned recommends that petitioner's petition for a writ of habeas corpus (Doc. 1) be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 20 days after being served with these findings and recommendations, any party may file written objections with the court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED:  October 22, 2009

Craig M. Kellison

**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE

12